**FOODSERVICE AND LODGING INSTITUTE, INC., Plaintiff,**

v.

**Donald T. REGAN, Secretary of the Treasury and Roscoe L. Egger, Commissioner of Internal Revenue, Defendants.**

Civ. A. No. 84–0184.

United States District Court,
District of Columbia.

April 5, 1984.

Thomas W. Power, Robert D. McDonald, Thomas A. Cocciardi, Power & McDonald, Washington, D.C., for plaintiff.

Robert L. Gordon, Tax Div., Civil Trial Section, U.S. Dept. of Justice, Washington, D.C., for defendants.

## MEMORANDUM OPINION

THOMAS F. HOGAN, District Judge.

### I. INTRODUCTION

This matter is before the Court on plaintiff Foodservice and Lodging Institute, Inc.'s ("Foodservice") motion for preliminary injunction, defendants' motion to dismiss, and the respective oppositions thereto. At the hearing of these matters on February 27, 1984, the parties agreed and the Court orally ordered *sua sponte* that the parties' pleadings be treated as cross-motions for summary judgment. Fed.R. Civ.P. 65(a)(2). Upon consideration of the parties' pleadings, including the parties' supplemental briefs on the effect of the Supreme Court's decision in *South Carolina v. Regan,* — U.S. —, 104 S.Ct. 1107, 79 L.Ed.2d 372 (1984), the complaint, the parties' oral argument and the entire record, the Court entered an order on February 29, 1984, denying defendants' motion

to dismiss, denying plaintiff's motion for preliminary injunction and entering summary judgment for defendants. This opinion is issued pursuant to that order.

This case involves a controversy over the proper way to implement an annual information tax return relating to tip income. By this action, Foodservice, a trade association of forty-two (42) multi-unit food service and/or lodging companies, attacks four regulations promulgated by defendants to implement this return. In particular, Foodservice seeks a declaration, pursuant to the Administrative Procedures Act, that the contested regulations are "arbitrary, capricious, ... not in accordance with law" and "in excess of statutory authority" and asks this Court to enjoin defendants from enforcing the regulations. Defendants move to dismiss the action, arguing that this Court is divested of jurisdiction by virtue of the Anti-Injunction Act, 26 U.S.C. § 7421(a), and the Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202.

In light of the Supreme Court's decision in *South Carolina v. Regan, supra,* and since this Court finds that Foodservice has no alternative avenue to litigate its claims on its members' behalf, defendants' motion to dismiss must be denied. Further, since the contested regulations are not arbitrary, irrational, unconstitutional or contrary to statute, and there being no material issue of fact, summary judgment must be entered for defendants. Accordingly, plaintiff's motion for preliminary injunction is mooted and must be denied.

## II.  FACTUAL BACKGROUND

Section 6053(a) of the Internal Revenue Code ("I.R.C.") requires employees who receive tips in the course of their employment to periodically report their tip income to their employers, who, on the basis of these reports, withhold income and social security taxes from the employees' wages. I.R.C. § 3402(f). In September of 1982, in

an effort to eliminate widespread underreporting of tip income, Congress amended Section 6053 by imposing tip income reporting requirements on "large food and beverage establishments." [1]  P.L. 97–248, Sec. 314(a), 96 Stat. 603–05. (See S.Rep. 97–494, 97th Cong., 2d Sess. (1982) at 251, *reprinted in* 1982 U.S.Code Cong. & Ad. News [hereinafter "News"] 781, 1003, for a statement that an estimated 84 percent of the taxes on tip income goes unpaid.) An employer's duties under this amendment are threefold. First, each such employer is required to report to the Secretary of the Treasury ("the Secretary"), for each calendar year, several items of information, including the aggregate amount of charge receipts and the aggregate amount of charged tips shown on such charge receipts. I.R.C. § 6053(c)(1). Second, such establishments are required to determine, for each payroll period, whether the aggregate amount of tips reported by all its employees pursuant to Section 6053(a) total at least 8% of the gross receipts. If not, the employer is required to allocate the difference between the aggregate amount reported and 8% of the establishment's gross receipts ("the shortfall") among its tipped employees. I.R.C. § 6053(c)(3)(A). If the employer has negotiated a "good faith agreement" with its employees as to how the shortfall should be allocated, the allocation is to be done on the basis of this agreement. I.R.C. § 6053(c)(3)(B)(i). In the absence of such an agreement, the employer must allocate on the basis of regulations promulgated by the Secretary. I.R.C. § 6053(c)(3)(B)(ii). The amount allocated to each employee under these provisions must then be reported on an annual basis by the employer to both the Internal Revenue Service ("the Service") and the employee. I.R.C. § 6053(c)(2).

In enacting Section 6053(c), Congress directed the Secretary to promulgate regulations to implement several facets of the provision.[2]  On December 8, 1982, the Ser-

---

**1.**  *See infra* p. 1021 for a definition of this term.

**2.**  These included: to implement the employer's annual report to the Service and to each em-

ployee (§ 6053(c)(1), (2)); to determine the allocation formula to be used in the absence of a good faith agreement (§ 6053(c)(3)(B)(ii)); to determine rules to implement the statutory defi-

vice published a set of temporary regulations (47 Fed.Reg. 55215) and proposed amendments to the Employment Tax Regulations, 26 C.F.R. Part 31 (47 Fed.Reg. 55248). Following consideration of public comments, the regulations were revised and published in final on August 15, 1983. 48 Fed.Reg. 36807.

On January 18, 1984 Foodservice brought the instant action, asking this Court to declare three of these regulations unlawful and enjoin their enforcement. In addition, Foodservice challenges a regulation that has been in effect since 1969 which deals with withholding priorities. These regulations and Foodservice's respective complaints with each are dealt with below.

### A) *Segregation of Charge Receipts*

I.R.C. §§ 6053(c)(1)(B) and (C) require employers to report "[t]he aggregate amount of charge receipts" and "[t]he aggregate amount of charged tips shown on such charge receipts." The regulations require reporting of "[t]he aggregate amount of charge receipts ... on which there were charged tips" and "[t]he aggregate amount of charged tips shown on such charge receipts." 26 CFR §§ 31.6053–3(a)(1)(iv) and (a)(1)(v), 48 Fed.Reg. at 36809.

Plaintiff complains that this regulation is burdensome because it will require its members to institute new recordkeeping procedures to separately account for charge receipts with tips. Foodservice further asserts that the regulation is not in accordance with the Code and is of no administrative value as the information it requires "would in no way help the Internal Revenue Service more accurately ascer-

tain the income of any individual." In particular, Foodservice asserts that the statute was promulgated to reflect the tip rate, and that in order for the regulation to adequately reflect this rate, it should require reporting of the *total* charge sales as otherwise the "stiff" rate (i.e., where no tip is left) is ignored.

### B) *Allocation Formula*

Section 6053(c)(3)(B)(ii) of the Code directs the Secretary to devise a formula for allocation of the "shortfall" among tipped employees where employers have not negotiated a good faith agreement with their employees as to how the shortfall should be allocated. The formula devised by the Secretary, 26 CFR § 31.5053–3(f), 48 Fed. Reg. at 36811–36813, allocates the shortfall solely among directly tipped employees.[3]

Plaintiff alleges that this provision—by excluding indirectly tipped employees and thus tip-splitting arrangements (i.e., where "directly tipped" employees such as waiters share their tips with employees such as busboys who aid in service) from the scope of the allocation formula—is not in accordance with the statute; requires plaintiff to allocate more to directly tipped employees than "should lawfully be allocated pursuant to the statute"; and, that its members are experiencing "severe employee relations problems" as a result of the "misallocation."

### C) *Definition Of "Large Food or Beverage Establishment*

I.R.C. § 6053(c)(4) defines a "large food or beverage establishment" as a business providing food or beverages, where tipping is customary, and "which normally em-

---

nition of "large food or beverage establishment" (§ 6053(c)(4)); and to implement the application of the provision to new businesses (§ 6053(c)(7)).

**3.** The terms "directly tipped employee" and "indirectly tipped employee" are defined respectively in the regulation, 26 CFR 31.6053–3(j)(12) and (13), 48 Fed.Reg. at 36815–36816, as follows:

   (12) *Directly tipped employee.* A "directly tipped employee" is any tipped employee who receives tips directly from customers, includ-

ing an employee who after receiving tips directly from customers turns all the tips over to a tip pool. Examples of directly tipped employees are waiters, waitresses, and bartenders.

   (13) *Indirectly tipped employee.* An "indirectly tipped employee" is a tipped employee who does not normally receive tips directly from customers. Examples of indirectly tipped employees are busboys, service bartenders and cooks.

ployed more than 10 employees on a typical business day during the preceding calendar year." The Code directs the Secretary to promulgate regulations to define the scope of this last phrase.

The regulation promulgated by the Secretary pursuant to this directive, 26 CFR § 31.6053–3(j)(9), 48 Fed.Reg. at 36815, provides in pertinent part:

> The employees of an employer shall include all employees at all food or beverage operations who, along with the employees of such employer, would be treated as employees of a single employer under section 52(a) or (b) (as in effect on September 3, 1982) and the regulations thereunder.

Foodservice asserts that this regulation is beyond the reach of the Code because it includes within its scope all establishments operated by an employer so long as the separate establishments taken together employ more than ten employees on a typical business day.

### D) *Withholding Priorities*

I.R.C. § 3402(k)[4] provides that income tax for tips reported to an employer under Section 6053(a) can be withheld from wages paid to that employee, to the extent that the employer has funds of that employee (excluding tips) in his control.

Treasury Regulation 26 CFR 31.3402(k)–1(c), promulgated pursuant to Section 3402(k) in 1969, provides that collection of taxes on tips shall take priority over other non-federal tax claims, including State taxes and union dues. *See id.*, Example (1).

Plaintiff asserts that this regulation is in excess of statutory authority as it provides a potential for a "negative paycheck" and will impair an employer's interest in its employees' wages for debts due it (i.e., an employer may be legally obligated under ERISA to pay out funds for a pension plan and this, taken together with taxes due on tips, may exceed the amount of wages paid on an hourly rate, since the employer never has control of the tip income).

Defendant's principal response to these attacks is that the Anti-Injunction Act, 26 U.S.C. § 7421(a), bars this action. The Act provides, in pertinent part, that "no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court, by any person, whether or not such person is the person against whom such tax was assessed." Defendants contend that this suit falls within the Act as it will prevent the implementation of a regulatory scheme, the information from which it will ultimately use to make tax assessments. Defendants further assert that this case falls outside the judicially-created exceptions to the Act established by *South Carolina v. Regan*, — U.S. —, 104 S.Ct. 1107, 79 L.Ed.2d 372 (1984), and *Enochs v. Williams Packing & Navigation Co.*, 370 U.S. 1, 82 S.Ct. 1125, 8 L.Ed.2d 292 (1962). Accordingly, they seek dismissal.

### III. ANALYSIS

#### A) *The Applicability of the Anti-Injunction Act*

In *South Carolina v. Regan*, — U.S. —, 104 S.Ct. 1107, 79 L.Ed.2d 372

---

**4.** (k) *Tips.*—In the case of tips which constitute wages, subsection (a) shall be applicable only to such tips as are included in a written statement furnished to the employer pursuant to section 6053(a), and only to the extent that the tax can be deducted and withheld by the employer, at or after the time such statement is so furnished and before the close of the calendar year in which such statement is furnished, from such wages of the employee (excluding tips, but including funds turned over by the employee to the employer for the purpose of such deduction and withholding) as are under the control of the employer; and an employer who is furnished by an employee a written statement of tips (received in a calendar month) pursuant to section 6053(a) to which paragraph (16)(B) of section

3401(a) is applicable may deduct and withhold the tax with respect to such tips from any wages of the employee (excluding tips) under his control, even though at the time such statement is furnished the total amount of the tips included in statements furnished to the employer as having been received by the employee in such calendar month in the course of his employment by such employer is less than $20. Such tax shall not at any time be deducted and withheld in an amount which exceeds the aggregate of such wages and funds (including funds turned over under section 3102(c)(2) or section 3202(c)(2) minus any tax required by section 3102(a) or section 3202(a) to be collected from such wages and funds).

(1984), the Supreme Court held that the Anti-Injunction Act does not bar a suit where Congress has not provided an aggrieved party with an alternative avenue to litigate its claims on its own behalf. At ——, 104 S.Ct. at 1116. There, the State of South Carolina invoked the Court's original jurisdiction and asked leave to file a complaint against the Secretary of the Treasury in order to challenge the constitutionality of § 310(b)(1) of TEFRA which amended I.R.C. § 103. Like here, the Secretary argued that the Anti-Injunction Act barred the action. The Court disagreed, stressing the unavailability of a refund action: since South Carolina incurred no tax liability under the contested provision, it was unable to utilize any statutory procedure to contest its constitutionality and accordingly the Act could not bar the action. At ——, 104 S.Ct. at 1115. The Court further held that the possibility of convincing a third party to raise the claim was an insufficient remedy:

> Here, the indicia of congressional intent—the Act's purposes and the circumstances of its enactment—demonstrate that Congress did not intend the Act to apply where an aggrieved party would be required to depend on the mere possibility of persuading a third party to assert his claims. Rather, the Act was intended to apply only when Congress has provided an alternative avenue for an aggrieved party to litigate its claim on its own behalf.

At ——, 104 S.Ct. at 1116. In the instant case, Foodservice is unable to raise its claims in a refund suit as the injuries it complains of, overburdensome reporting requirements, other administrative costs and adverse employee relations, arise from informational requirements, not overpayment of taxes. Defendants proffer, however, that unlike the State of South Carolina,

Foodservice does have an alternative remedy for each of its claims.

With respect to each of the three TEFRA regulations, the government suggests that one of Foodservice's members could fail to file a reporting item required by the Code; pay the respective penalty added to the Code by TEFRA for failing to file that reporting;[5] file a claim for a refund; and, ultimately file a refund suit.

An almost identical suggestion was rejected by Judge Bryant in *National Restaurant Association v. Simon*, 411 F.Supp. 993, 996 (D.C.D.C.1976). There, a trade association representing primarily restaurant operators contested a Revenue Ruling requiring employers to report certain tip information, in addition to the hourly wage information, on their employees' W–2 forms. Judge Bryant held the Anti-Injunction Act inapplicable due to lack of alternative judicial review. *See id.* at 996. Like here, the government suggested that one employer could pay a $1 penalty under § 6652 and then file for a refund. Judge Bryant did not agree:

> Under that section the plaintiff can test the validity of the ruling only by refusing to file the required information, and contesting a possible government assessment of a fine under § 6652. This is obviously not the "refund" action contemplated by the Act. It puts the plaintiffs in the untenable position of either complying, with no judicial review, or of defying the government's interpretation of their legal obligations under the Code, of being in essence a lawbreaker. The Court cannot imagine that the Congress intended such an anomalous result in a system which depends for its very existence on the principle of voluntary compliance. Nor does the Court believe that Congress intended to condition access to any judicial review of such a revenue ruling on subjecting oneself to a fine

5. With respect to Count One, challenging the regulation enacted pursuant to § 6053(c)(1), the government asserts that a member could pay a $50 assessment under I.R.C. § 6652(a)(1)(B)(iv); with respect to Count Two, challenging the allocation formula, the government suggests that a

Foodservice member pay a $50 penalty under § 6678; and, with respect to Count Three, the government suggests that one of Foodservice's members could fail to file either of the statements required above and pay a penalty under either § 6652 or § 6678 (whichever applies).

.... This is money not due to government in taxes, but rather is an extra sum the plaintiff's would apparently be required to risk merely to test the validity of a reporting and information requirement. This risk is not found in the ordinary refund litigation procedure. The Court therefore concludes, in light of these considerations and the obvious constitutional problems they may raise, that the Anti-Injunction Act was not intended to, and does not apply in such a situation. *Id.* at 996.

Although the Court notes that the Ninth Circuit's decision in *California v. Regan,* 641 F.2d 721 (9th Cir.1981), is contrary, this Court is not bound by that decision and finds Judge Bryant's opinion to be the better reasoned of the two. Accordingly, this Court finds that the round-about penalty route suggested by the government is not an "alternative remedy" prescribed by Congress and, as such, the Act does not bar this suit. *Cf. South Carolina, supra,* —— U.S. at —— ——, 104 S.Ct. at 1116–1117.

The fourth count concerning withholding priorities and Foodservice's fear of "negative paychecks" is also unaddressable in a refund suit. Foodservice does not complain of overpayment of tax, and thus, contrary to defendants' assertion, it cannot sue for a refund. Defendants rely on *United States v. American Friends Service Committee,* 419 U.S. 7, 95 S.Ct. 13, 42 L.Ed.2d 7 (1974), for the proposition that a refund suit is available here. There, a religious corporation ("A.F.S.C."), and later its employees, sought to enjoin the government from requiring that a portion of the employees' wages be withheld. Plaintiffs argued that the withholding provisions violated the employees' First Amendment right to bear witness to their religious beliefs. A.F.S.C. had, in response to its employees' request, ceased withholding a portion of their wages, although it continued to pay the full amount required. The District Court ordered a refund of the amounts tendered by A.F.S.C. since the government had also levied on the employees for the taxes and hence had received a double payment of the amount due. 419

U.S. at 8, 95 S.Ct. at 14. Here, however, there is and will be no such double payment. Further, the District Court noted that A.F.S.C.'s status as a taxpayer (and thus its ability to bring a refund suit) turned on whether or not its employees were required to pay the withholding. *United States v. American Friends Service Committee,* 368 F.Supp. 1176, 1182 (E.D.Pa.1973). Here, neither Foodservice nor its members' employees contest the ultimate validity of the taxes due. The Code section relied on by defendants for the availability of a refund suit, I.R.C. § 6414, provides for a refund "[i]n the case of an overpayment ...." As noted above, no overpayment will ever exist because plaintiff contests the priority of the withholding, not the ultimate validity of the tax. As such, the Court finds that there is no alternative remedy for Foodservice to litigate its claims on its members' behalf and, accordingly, the Act cannot bar this action.

## B) *The Propriety of the Contested Regulations*

Having concluded that this action is properly before it, the Court now turns to the merits of plaintiff's claims. As noted previously, the parties have agreed that the instant dispute is solely legal and thus treat their pleadings as cross-motions for summary judgment.

■■■ Section 706 of the Administrative Procedure Act, 5 U.S.C. § 706, states, in relevant part, that a reviewing court shall:

(2) hold unlawful and set aside agency action, findings, and conclusions found to be—

(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; ...

(C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right....

In reviewing regulations under these standards the scope of review is a narrow one. *See Ritter Transportation, Inc. v. I.C.C.,* 684 F.2d 86, 88 (D.C.Cir.1982); *Wawszkiewicz v. Department of Treasury,* 670 F.2d 296, 301 (D.C.Cir.1981). The reviewing

court must consider whether the agency's decision was based on a consideration of relevant factors and whether there has been clear error of judgment. *Ritter, supra*, 684 F.2d at 88. To uphold the agency action, the Court must find a rational basis for the agency's decision in the facts of record and must ensure that the agency has demonstrated a rational connection between the facts found and the choice made. *Wawszkiewicz, supra*, 670 F.2d at 301. The Court is not empowered to substitute its judgment for that of the agency. *Id.* Unless the regulations can be shown to be arbitrary, irrational, unconstitutional or contrary to statute, the Court must defer to the agency's determination. *See Antone v. Block*, 661 F.2d 230, 234 (D.C.Cir. 1981), *citing Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416, 91 S.Ct. 814, 823, 28 L.Ed.2d 136 (1971).

### 1. *Charge Receipt Reporting*

As noted previously, I.R.C. § 6053(c)(1)(B) and (C) require a large food or beverage establishment to report "[t]he aggregate amount of charge receipts" and "[t]he aggregate amount of charged tips shown on such receipts." The regulation promulgated pursuant to this subsection requires reporting of the "aggregate amount of charge receipts ... on which there were charged tips." 26 C.F.R. § 31.-6053–3(a)(1)(iv). Foodservice complains that this regulation (1) is not in accordance with the Code, as the Code requires reporting of the aggregate amount of charge receipts while the regulation requires reporting of only those charge receipts on which charge tips were shown; and (2) that there is no rational basis for requiring Foodservice's members to segregate charge receipts showing tips as the requirement is unduly burdensome and will not help the Service more accurately ascertain tip income. Neither of these arguments is persuasive.

As noted previously, concern over flagrant underreporting of tip income led Congress to expand tip reporting requirements in the food service industry. *See* S.Rep. No. 97–494, *supra* at 251, News at 1003.

At the same time it expanded reporting, Congress also directed the Service to prepare a detailed report over the next three years on tip compliance. *TEFRA*, § 314(c). This report is to be based on a statistical study conducted by the Internal Revenue Service and is to contain a plethora of detailed information concerning tip income. *See* H.Conf.Rep. No. 97–760, 97th Cong., 2d Sess. (1982) at 558, *reprinted in* News at 1329.

The avowed purpose of Section 6053(c) was to assist the Service in its examination of returns filed by tipped employees and to provide the Service with data from which it could target such underreporting. *See* Conf.Rep. No. 97–760, *supra*, at 557, News at 1328. The Commissioner determined that one way to do this, given the statutory directive that he collect aggregate charge receipt and charge tip information, was to exclude at the outset charge receipts without charged tips. Accordingly, this Court cannot find that the regulation is not in accordance with the Code.

■ The crux of plaintiff's challenge is that the tip rate ascertained as a result of this regulation will be inaccurate. However, the existence of a plausible alternative does not make the administrative outcome arbitrary, irrational or contrary to statute. *Cf. Wawszkiewicz, supra*, 670 F.2d at 303. The supplementary background information on the challenged regulation indicates that defendants considered arguments such as plaintiff's, but considered its method to be "necessary for both compliance purposes and the Congressionally mandated tip study provided for in Section 314(c) ..." 48 Fed.Reg. at 36808. This Court cannot substitute its judgment for defendants'. *See Wawszkiewicz, supra*, 670 F.2d at 303.

### 2. *The Allocation Formula*

■ Foodservice next complains that the allocation formula established by C.F.R. § 31.6053–3(f)(1) excluding "indirectly tipped employees" is not in accordance with

statute as "one group of employees is unfairly and unlawfully favored at the expense of another." Once again, in order to agree with plaintiff and set aside the regulation, this Court would have to substitute its judgment for that of defendants. *Cf. Wawszkiewicz, supra,* 670 F.2d at 303. Further, Judge Bryant rejected a similar argument in *National Restaurant Association, supra,* 411 F.Supp. at 998. There, the plaintiff challenged the Service's authority under I.R.C. § 6041(a) to require the reporting of charge tip information on the ground that the existence of tip-splitting arrangements removed such payments from coverage as "wages." The Court found that the fact that an employee may have to explain a discrepancy between information reported and actual income could not invalidate the reporting requirement where "the purpose of the statute was to help the government keep track of payments, the receipt of which may constitute income to the recipient." *Id.* at 998. The same analysis applies here. *See also* Conf. Rep. 97–760, *supra,* at 556 (noting that directly tipped employees are able to deduct tip-splitting).

### 3. *Definition of "Large Food or Beverage Establishment"*

▆ Foodservice asserts that defendants construction of the term "large food and beverage establishment" is in effect "enterprise" coverage, and thus contrary to congressional authorization. The Court cannot agree.

I.R.C. § 6053(c)(4), which directs the Commissioner to promulgate a regulation to implement this definition, expressly directs the Commissioner to pattern that regulation after I.R.C. §§ 52(a) and (b). The specific sentence in the regulation which plaintiff challenges states the following:

> The employees of an employer shall include all employees at all food or beverage operations who, along with the employees of such employer, would be treated as employees of a single employer

under section 52(a) or (b) (as in effect on September 3, 1982) and the regulations thereunder.

Since this regulation does nothing more than refer back to I.R.C. §§ 52(a) and (b), there is no basis for plaintiff's argument. I.R.C. §§ 52(a) and (b) basically require that employees of separate entities under common control be deemed to have a single employer. Thus, the result which plaintiff now challenges was precisely the result that Congress intended. The General Explanation of TEFRA published by the Joint Committee on Taxation plainly states—

> The 10 employee rule is to be applied with respect to all employees of the employer, not just the employees at a single establishment.

(Joint Committee Print, December 31, 1982, at 201).

Accordingly, plaintiff's challenge to this regulation must fail.

### 4. *Withholding Priorities*

▆ Plaintiff challenges the regulations under I.R.C. § 3402(k) on the ground that those regulations direct federal taxes to be paid from employees' wages prior to other deductions, such as union dues or charges for meals provided by the employer. Foodservice asserts that the taxes required to be withheld from the salaries of its members' employees are fully exhausting salary payments, thus preventing the employer from making these other deductions.

In most cases, there is no need to direct the priority of payments of withholdings from wage income, since the employer will have all funds subject to withholding within his control. The tip income area is the unique exception to this rule, since the employer will be withholding based on the employee's salary *and* the amount of tips reported to him by the employee under Section 6053(a), while he will only have the salary portion within his control. Thus, it is conceivable that the withholding for taxes (on the salary plus tips) will equal or

exceed the amount in the employer's control.

I.R.C. § 3402(k) [6] was enacted at the time tip reporting was first begun in 1965 to protect employers, by ensuring that they would never have to pay over more to the government in withheld taxes than they were obliged to pay the employee. The challenged regulation repeats this rule, and thus is consistent with the Code.

Further, the "negative paycheck" problem is expressly recognized in the Senate Report to the TEFRA amendment, yet the Senate chose to "retain the rules of present law relating to ... withholding of FICA and income taxes." *See* S.Rep. No. 97–494, *supra*, at 251–52, News at 1005–06. To the extent the amount within the employer's control is insufficient to pay all taxes, the employee must pay the excess. *Id.* The employer must furnish a statement to the employee (I.R.C. § 6053(b)), and the employee is thereafter expected to either pay estimated tax (like any other salaried individual whose withholdings are too low; *see* I.R.C. § 6015), or provide the employer with funds for this purpose. *See* S.Rep. 97–494, *supra*, at 251, News at 1003. Thus, the regulation can hardly be claimed to be inconsistent with the will of Congress.

## IV. CONCLUSION

This Court concludes that Foodservice has no alternative avenue to litigate its claims on its members' behalf. Therefore, defendants' motion to dismiss must be denied. In addition, this Court finds that the contested regulations are not arbitrary, irrational, unconstitutional, contrary to or in excess of statutory directive. Accordingly, there being no issue of material fact and defendants being entitled to judgment as a matter of law, summary judgment must be entered for defendants. Upon so finding, plaintiff's motion for preliminary injunction is mooted and therefore must be denied. An appropriate order was issued on February 29, 1984.

**6.** *See, supra* note 4 for the full text of this Section.