**NATIONAL TAXPAYERS UNION, INC., Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Civ. A. No. 93–1796(RCL).**

United States District Court,
District of Columbia.

Aug. 31, 1994.

---

David M. Katinsky, Donald J. Gavin, Tax Div., U.S. Dept. of Justice, Washington, DC, for defendant.

Charles F. Rule, Jackson R. Sharman, III, Allan B. Moore, Covington & Burling, Mark R. Levin, Jerald L. Hill, Mark J. Bredemei-er, Richard P. Hutchison, Landmark Legal Foundation, Washington, DC, for plaintiff.

## MEMORANDUM OPINION

LAMBERTH, District Judge.

This case comes before this court on defendant's motion to dismiss and on plaintiff's motion for summary judgment. In a separate order that shall issue this date, this court shall grant defendant's motion to dismiss for lack of jurisdiction and shall deny plaintiff's summary judgment motion as moot, for the reasons stated below.

## I. FACTS

This case challenges the constitutionality of a provision of the recently enacted tax reform law, the Omnibus Budget Reconciliation Act of 1993 ("Act"). The provision at issue is Section 13208 of Title XIII of that Act ("Section 13208"), which retroactively increased the tax rate on certain estates and lifetime gifts.[1]

Section 13208, which was signed into law on August 10, 1993, eradicated a short-lived lower gift and estate tax rate. About seven months before, on January 1, 1993, the top tax rate on the largest estates and gifts had dropped to 50 percent from 53 to 55 percent, the rates at which such estates and gifts had been taxed since .1984.[2] Section 13208 restored the old, pre-January 1993 rates. Under Section 13208, the tax rate for estates and lifetime gifts valued between $2.5 million and $3.0 million rose from 50 percent to 53

---

1. Section 13208 provides as follows:
    (a) GENERAL RULE.—The table contained in paragraph (1) of section 2001(c) is amended by striking the last item [applying a tax rate of 50 percent to all taxable estates or gifts over $2.5 million] and inserting the following new items:

| "Over $2,500,000 but not over $3,000,000 | $1,025,800, plus 53% of the excess over $2,500,000. |
| Over $3,000,000 | $1,290,800, plus 55% of the excess over $3,000,000" |

    . . .

    (c) EFFECTIVE DATE.—The amendments made by this section shall apply in the case of decedents dying and gifts made after December 31, 1992.
    Section 13208(a) amends relevant portions of 26 U.S.C. § 2001(c)(1). Section 13208(c) is codified at 26 U.S.C. § 2001 note.

2. From 1984 to January 1, 1993, gifts and estates valued over $2,500,000 but not over $3,000,000 had been taxed at $1,025,800 plus 53% of the excess over $2,500,000. Similarly, from 1984 to January 1, 1993, gifts and estates valued over $3,000,000 were taxed at $1,290,800 plus 55% of the excess over $3,000,000.

percent, and the tax rate for estates and lifetime gifts valued over $3.0 million rose from 50 percent to 55 percent.

Significantly for this lawsuit, Congress made the gift and estate tax increase retroactive to capture revenue from January 1, 1993. Section 13208(c) applies the restored higher tax rates to the estates of decedents who died, and to lifetime gifts that were made, between January 1, 1993 and August 10, 1993.

The National Taxpayers Union, Inc., ("NTU") brought this action to challenge the constitutionality of this retroactive tax increase on gifts and estates. NTU is a nonprofit corporation whose "fundamental purpose ... is to educate taxpayers, legislators, and the general public in a non-partisan fashion on the control of government spending and taxes and to promote sound, lawful, and fair revenue practices by the United States government." (Pl.'s Complaint at ¶ 5.) NTU has members who pay estate and gift taxes, who are executors of estates, and who are the heirs of estates and the donees of gifts. (Pl.'s Complaint at ¶ 5.)

NTU seeks injunctive and declaratory relief. The organization seeks a permanent injunction against the collection or enforcement of Section 13208, and a declaration that Section 13208 violates three constitutional provisions: Article I, the Due Process Clause of the Fifth Amendment, and the Taking Clause of the Fifth Amendment. The court does not reach the merits of plaintiff's case because the court lacks jurisdiction to decide the merits.

## II. ANALYSIS

As stated above, plaintiff seeks a permanent injunction barring defendant from applying or enforcing Section 13208 and a declaration that Section 13208 violates three constitutional provisions. Because the Anti-Injunction Act, 26 U.S.C. § 7421(a) ("AIA"),[3] deprives this court of jurisdiction to do the former, and because the Declaratory Judgment Act, 28 U.S.C. § 2201(a) ("DJA"),[4] deprives this court of jurisdiction to do the latter, plaintiff's case must be dismissed.[5]

The AIA bars any court from enjoining the collection or enforcement of any federal tax. The AIA itself carves out a few statutory exceptions to its anti-injunction bar, but plaintiff does not contend that any of those exceptions apply here. Instead, NTU argues that its case falls into one of the two judicially created exceptions to the AIA. The Supreme Court has held that the AIA does not apply where a plaintiff has no recourse to any alternative legal remedies (see *South Carolina v. Regan*, 465 U.S. 367, 104 S.Ct. 1107, 79 L.Ed.2d 372 (1984)), nor where the alternative legal remedies that do exist are inadequate and the government cannot possibly win on the merits (see *Enochs v. Williams Packing & Navigation Co., Inc.*, 370 U.S. 1, 82 S.Ct. 1125, 8 L.Ed.2d 292 (1962)). In this case, neither of these exceptions are applicable, because at least some of NTU's members have adequate legal remedies of their own.

### A. South Carolina

Plaintiff argues first that its case falls into the *South Carolina* exception to the AIA bar. In *South Carolina*, the Supreme Court held

---

**3.** The AIA provides as follows:

Except as provided in sections 6212(a) and (c), 6213(a), 6672(b), 6694(c), and 7426(a) and (b)(1), and 7429(b), no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person, whether or not such person is the person against whom such tax was assessed.

**4.** The DJA provides in relevant part as follows:

In a case of actual controversy within its jurisdiction, except with respect to Federal Taxes other than actions brought under section 7428 of the Internal Revenue Code of 1986, ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

**5.** Although defendant argues that this entire case should be dismissed for lack of standing as well, the court avoids that constitutional question by dismissing this case on the statutory grounds of the AIA and the DJA. *See LaSalle Rolling Mills, Inc. v. United States*, 832 F.2d 390, 392 n. 6 (7th Cir.1987).

that the AIA does not bar injunctive actions brought by aggrieved parties who lack recourse to any alternative remedy.[6] The plaintiff in that case, South Carolina, sought an injunction to protect its bondholders from the enforcement of a federal tax that it argued was unconstitutional. The Court found that South Carolina would suffer indirectly as the tax hit its bondholders—either it would have to alter the form of its bonds or absorb at least some of the cost of the tax.[7] Yet because the federal tax did not impose any direct tax liability on South Carolina,[8] South Carolina could not take advantage of any statutory procedure to dispute the tax.[9] Friendly bondholders might use those statutory procedures to raise the constitutional challenges that South Carolina wished to make, but the Court ruled that it would not require South Carolina to depend on a third party to raise its claims for it.[10] Seeing no alternative action open to South Carolina to contest the tax's constitutionality, the Supreme Court held that the AIA did not bar South Carolina's injunctive suit.

NTU claims that, like South Carolina, it suffers the tax indirectly and that this suit for injunctive relief is its sole remedy. NTU claims that Section 13208 hurts it indirectly, either by its secondary effects,[11] or (as in *South Carolina*) by its shifting of some of the true cost of the tax to NTU.[12] Yet because NTU—an organization of taxpayers but not a taxpayer itself[13]—will incur no tax

liability, it cannot employ any of the ordinary alternative procedures to contest the tax. Like South Carolina, NTU could rely on a friendly constituent taxpayer to raise the organization's claims in a post-enforcement suit, but NTU cannot compel any such help. Fears of compromised privacy, undue financial disclosure, and government retaliation may deter "[s]ome if not all" NTU members from shouldering NTU's suit this way,[14] just as the IRS's practice of routinely auditing the returns of taxpayers who litigate refund claims may have deterred South Carolina's bondholders from raising the state's claims in refund actions.[15]

Although in all these particulars NTU resembles South Carolina in its successful effort to jump the AIA bar, the *South Carolina* court took care to distinguish suits like NTU's from suits by states. The Court anticipated that taxpayer groups would craft complaints that mirrored South Carolina's, claiming that a challenged tax harms not just member taxpayers, but that it harms, indirectly, the group. The Court understood that permitting such suits to go forward would let taxpayers too easily evade the AIA by forming tax-litigating organizations.[16] To thwart such suits, the Court stated in a footnote that the AIA would indeed bar injunctive suits of organizations whose constituents were taxpayers with alternative remedies of their own.[17]

6. *South Carolina*, 465 U.S. at 378, 104 S.Ct. at 1114.

7. *See id.* at 371–72, 104 S.Ct. at 1110–11.

8. *See id.* at 379–80, 104 S.Ct. at 1114–15.

9. *See id.* at 380, 104 S.Ct. at 1115.

10. *See id.* at 381, 104 S.Ct. at 1115.

11. NTU alleges that Section 13208 has burdened it with the costs of lobbying and of launching educational efforts against the tax. *See* Keating Aff. at ¶¶ 16–18. Section 13208 has also frustrated NTU's "founding objectives and substantial practical efforts to assist taxpayers and to promote sound, lawful, and fair revenue practices by the United States government." Complaint at ¶ 25.

12. NTU alleges that Section 13208 has reduced its donations by diminishing the disposable

wealth of its donating members. *See* Keating Aff. at ¶¶ 16–18. NTU members include donors, executors, estates, donees and legatees affected by Section 13208. *See* Keating Aff. at ¶¶ 11–14.

13. *See* Keating Aff. at ¶ 3.

14. *See* Keating Aff. at ¶ 15.

15. *See South Carolina*, 465 U.S. at 380 n. 18, 104 S.Ct. at 1115 n. 18.

16. In fairness, it should be noted that NTU was not founded simply to take advantage of *South Carolina*. Indeed, it was founded over a decade before *South Carolina* was decided. *See* Keating Aff. at ¶ 3 (stating that NTU was formed in 1969).

17. *See South Carolina*, 465 U.S. at 381 n. 19, 104 S.Ct. at 1115–16 n. 19. The Court was responding to a comment of Justice O'Connor, who concurred in the judgment.

NTU's suit is an example of the sort of taxpayer group suit the *South Carolina* court anticipated and wished to leave barred by the AIA. Many of NTU's members may bring their own individual actions against Section 13208, either by resisting a proposed deficiency assessment in the Tax Court,[18] or by paying the full amount of the deficiency assessment and seeking a refund in U.S. District Court or U.S. Court of Federal Claims.[19] The Supreme Court has cautioned that where "taxpayers have alternative remedies, it would elevate form over substance to treat such organizations [of taxpayers] as if they did not possess alternative remedies."[20]

NTU counters that because not *all* of its members possess such alternative remedies, its action should be allowed. NTU concedes that some of its members may challenge the tax themselves:[21] its donor members who are aggrieved by the tax may bring post-enforcement actions challenging Section 13208, and its executor members may bring post-enforcement actions on behalf of their estates challenging the tax. However, some of its members lack such alternative remedies. Its legatees, for example, cannot bring post-enforcement suits of their own. The legatees may be "aggrieved parties" because the funds they inherit are reduced by the amount of the Section 13208 tax, but since they have not paid the tax themselves, they cannot bring any post-enforcement action.[22]

In *Foodservice and Lodging Institute, Inc. v. Regan,* 809 F.2d 842 (D.C.Cir.1987), however, this Circuit held that if even one member of a collective plaintiff has an "alternative remedy," the AIA bars the collective plaintiff's injunctive suit. The *Foodservice* court held that the *South Carolina* exception to the AIA did not apply to a claim of a trade association suing on behalf of its taxpaying employer members, because at least one of the trade association's aggrieved members could have brought suit individually on the trade association's claims.[23] In *Foodservice,* the government asserted (and the district court did not question) that with respect to some claims, "one" of the collective plaintiff's members could refuse to file a reporting item that the Internal Revenue Code required, pay the statutory penalty for its failure to file the reporting, file a claim for a refund and bring a refund suit.[24] This was enough for the Court of Appeals to find that it was "clear that alternative remedies are available," and to hold that the district court lacked jurisdiction over the relevant elements of the trade association's injunctive action.[25]

In any event, legatee members of NTU may have indirect alternative remedies at their disposal. Where appropriate, they may hold the executors of their estates liable for negligently performing their tax responsibilities. *See, e.g., In re Estate of Ridl,* 455 N.W.2d 188, 192–93 (N.D.1990) (executor

---

**18.** 26 U.S.C. §§ 6212, 6213.

**19.** 28 U.S.C. § 1346(a)(1) gives district courts concurrent jurisdiction with the U.S. Court of Federal Claims over civil actions against the United States "for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected, or any penalty claimed to have been collected without authority or any sum alleged to have been excessive or in any manner wrongfully collected under the internal-revenue laws."

26 U.S.C. § 7422(a) requires that no such suit may be maintained until "a claim for refund or credit has been duly filed with the Secretary, according to the provisions of law in that regard, and the regulations of the Secretary established in pursuance thereof."

**20.** *South Carolina,* 465 U.S. at 381 n. 19, 104 S.Ct. at 1115–16 n. 19.

**21.** *See* Pl.'s Opp'n at 16.

**22.** Pl.'s Opp'n at 16–17; Keating Aff. at ¶ 15.

**23.** *See Foodservice,* 809 F.2d at 844–45. The court was analyzing two of plaintiff's three challenges to regulations under the Tax Equity and Fiscal Responsibility Act of 1982.

**24.** *See Foodservice and Lodging Institute, Inc. v. Regan,* 583 F.Supp. 1018, 1023 (D.D.C.1984).

**25.** *Foodservice,* 809 F.2d at 845.

The appellate court in *Foodservice* never explicitly stated that if only one employer-member had an alternative remedy, the *South Carolina* exception did not apply. However, the appellate court did reverse for lack of jurisdiction a district court that had stated that "one" of the trade association's members had alternative remedies. *Foodservice,* 583 F.Supp. at 1023. This court interprets that reversal as instruction that where at least some members of a collective plaintiff have alternative remedies, *South Carolina* does not apply.

may be held responsible for overpaying a federal estate or gift tax); *In re Estate of Estes*, 134 Ariz. 70, 654 P.2d 4, 8–10 (Ct.App. 1982) (same). *But see Maynard v. Maynard's Adm'r*, 251 Ky. 246, 64 S.W.2d 567, 569 (1933) (administrator not liable for excess tax "paid in good faith" after it is already paid); *In re Constable's Estate*, 299 Pa. 509, 149 A. 743, 745 (1930) (executor not liable for failing to submit doubtful deductions where executor was not alleged to have acted in bad faith). Arguably, these tax responsibilities may include challenging the constitutionality of Section 13208. Yet because such indirect remedies may not suffice as "alternative remedies" under *South Carolina*, this court does not rely on that ground.[26]

In short, because many of NTU's members have alternative remedies available, NTU's action does not fall under the *South Carolina* exception to the AIA bar. In *Foodservice* as in this case, post-enforcement procedures may not be the preferred remedies, but they suffice given "the powerful government interests in protecting the administration of the tax system from premature judicial interference."[27] To hold otherwise would permit NTU and other "[n]on-taxpaying associations of taxpayers [to] impede the process of collecting federal revenues and require Treasury to focus its energies on questions deemed important not by it or Congress but by a host of private plaintiffs," the result the *South Carolina* court wished to avoid.[28]

### B. Williams Packing

NTU's second argument is that its case falls into the second judicially created exception to the AIA bar, an exception established in *Williams Packing*. In that case, plaintiff sought to enjoin the collection of taxes that were allegedly past due, arguing that collec-tion would throw it into bankruptcy and that the taxes were improperly assessed. The Supreme Court ruled that the AIA would not apply "if the taxpayer (1) was certain to succeed on the merits, and (2) could demonstrate that collection would cause him irreparable harm."[29]

NTU cannot satisfy the second prong of the *Williams Packing* test. It cannot show that the enforcement and collection of Section 13208 taxes works an irreparable harm or (to restate the test) that the alternative legal remedies are inadequate. *See, e.g., Church of Scientology of Celebrity Centre v. Egger*, 539 F.Supp. 491, 495 (D.D.C.1982) (second prong of *Williams Packing* requires showing of irreparable injury and unavailability of adequate legal remedy).

NTU's *Williams Packing* argument appears to be a recasting of its unsuccessful *South Carolina* argument. NTU argues that "this Court has equity jurisdiction [under *Williams Packing*] because NTU has *no* alternative remedies at law: NTU is not itself an estate or gift taxpayer, and therefore a deficiency or refund action is not available." Accordingly, NTU argues, the harms that it will suffer—the drying up of its donations, the costs of NTU's anti-Section 13028 education and lobbying efforts, and NTU's moral despair at seeing its goals frustrated—will go unredressed.[30] However, these harms are simply not a sufficient showing of irreparable injury under *Williams Packing* test. NTU does not allege that the costs of its education and lobbying efforts are so high as to threaten irreparable damage to the organization, and NTU's moral despair can be repaired and its faith in the fairness of American taxation be restored if Section 13208 is overturned in a post-enforcement action. *See, e.g., Bob Jones*, 416 U.S. at 746–

---

26. *See id.* at 845 n. 6 (expressing uncertainty as to whether availability of such indirect alternative remedies satisfies *South Carolina*).

27. *Bob Jones University v. Simon*, 416 U.S. 725, 747, 94 S.Ct. 2038, 2051, 40 L.Ed.2d 496 (1974).

Indeed, on this point *Foodservice* was a closer case than this one. In *Foodservice*, the "alternative remedy" required the taxpayers to pay a penalty to challenge the tax (*see Foodservice*, 583 F.Supp. at 1023–24 & n. 5). Here, plaintiff complains of no such penalty.

28. *South Carolina*, 465 U.S. at 394–95, 104 S.Ct. at 1122–23 (O'Connor, J., concurring in the judgment).

29. *Id.* at 374, 104 S.Ct. at 1112 (restating the rule of *Williams Packing*, 370 U.S. at 6–7, 82 S.Ct. at 1128–29).

30. Pl.'s Opp'n at 18 (emphasis added). *See supra* at notes 11, 12.

48, 94 S.Ct. at 2050–52; *Church,* 539 F.Supp. at 495–96. *Contrast Comm'r v. Shapiro,* 424 U.S. 614, 633, 96 S.Ct. 1062, 1073, 47 L.Ed.2d 278 (1976) (approving finding of irreparable injury where Commissioner had levied bail funds that taxpayer needed to avoid incarceration abroad, where taxpayer would be incapable of litigating the tax issue).

NTU might have made an alternative *Williams Packing* argument by emphasizing that Section 13208 injures its *members* by taxing them unconstitutionally. It might have argued that although the AIA bars actions to enjoin the collection of taxes of "any person, whether or not such person is the person against whom such tax was assessed," [31] the inadequacy of the alternative legal remedies available to its members puts this case under the *Williams Packing* exception. Yet even this argument would have failed. NTU's members who must pay the tax may either refuse to pay it and resort to Tax Court review of proposed deficiencies, or pay it and bring refund suits in either the United States District Court or the Court of Federal Claims. *See supra* at 535. These remedies afford adequate relief even if the relief is somewhat delayed, especially since NTU does not even allege in its jurisdictional argument or its supporting affidavit that the financial injury to its members will do them irreparable damage. *See, e.g., Bob Jones,* 416 U.S. at 746–48, 94 S.Ct. at 2050–52; *Church,* 539 F.Supp. at 495–96. Because these adequate alternative remedies are available, NTU may not claim the *Williams Packing* exception to the AIA bar. *See American Federation of Gov't Employees v. United States,* 669 F.Supp. 12, 13–14 (D.D.C. 1987) (where members of plaintiff group have adequate alternative remedies, plaintiff group may not invoke the *Williams Packing* exception).

### C. *Efficiency*

■ Lastly, NTU appeals to this court to find an exception to the AIA for the sake of litigation efficiency. NTU argues that if the constitutionality of Section 13208 is not decided here, individual taxpayers will have to bring post-enforcement actions separately, and courts nationwide will have to decide all of those similar constitutional challenges individually.[32] Even if it is true that post-enforcement litigation must be so fractured, NTU should address its argument not to this court but to Congress, who deprived this court of the power to hear NTU's action and made no exception for inefficiency.

### III. *CONCLUSION*

■ Because NTU has not established that it qualifies for any of the exceptions to the AIA, its claim for an injunction is barred. The DJA, which is coterminous with the AIA,[33] bars NTU's claim for declaratory relief as well. Accordingly, NTU's entire case shall be dismissed with prejudice, and NTU's summary judgment motion shall be denied as moot.

### *ORDER*

This case comes before this court on defendant's motion to dismiss and on plaintiff's motion for summary judgment. Upon consideration of the motions, the oppositions, and the replies, and the entire record herein, and for the reasons stated in a separate memorandum opinion that has issued this date, this court hereby ORDERS as follows:

1. Defendant's motion to dismiss for lack of jurisdiction is GRANTED. The complaint is DISMISSED WITH PREJUDICE.

2. Plaintiff's summary judgment motion is DENIED as moot.

SO ORDERED.

---

31. 26 U.S.C. § 7421(a).

32. Pl.'s Opp'n at 19.

33. *See Investment Annuity, Inc. v. Blumenthal,* 609 F.2d 1, 4 (D.C.Cir.1979), *cert. denied sub nom. First Investment Annuity Co. v. Miller,* 446 U.S. 981, 100 S.Ct. 2961, 64 L.Ed.2d 837 (1980).